UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jeannine Marie Fragola,

        Plaintiff,                    **MEMORANDUM OPINION AND ORDER**

v.                                         Civil No. 10-4718 ADM/TNL

City of Saint Paul,
Saint Paul Police Department and
Officer Matthew Shohara,

        Defendants.

_____

Stephen W. Cooper, Esq., and Stacey R. Everson, Esq., The Cooper Law Firm Chartered, Minneapolis, MN, on behalf of Plaintiff.

Judith A. Hanson, Esq., Assistant St. Paul City Attorney, St. Paul, MN, on behalf of Defendants.
_____

## I. INTRODUCTION

On December 15, 2011, the undersigned United States District Judge heard oral argument on Defendants' Motion for Summary Judgment [Docket No. 19] ("SJ Motion"). Plaintiff Jeannine Marie Fragola ("Fragola") opposes the motion and filed a Motion to Amend Complaint [Docket No. 31]. For the reasons stated below, Defendants' Motion for Summary Judgment is granted.

## II. BACKGROUND[1]

On July 4, 2010, 61-year-old Fragola was at her alcohol and drug-free multi-housing residence, St. Christopher's Place. Mem. in Opp'n to Defs.' Mot. for Summ. J. [Docket No. 28]

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

("Opp'n Mem.") 1–2. She was upset about a broken drinking fountain and had taped a complaint to the building manager's door. Opp'n Mem. 2. Roger Sykes ("Sykes"), a staff member at St. Christopher's Place, called the police to remove her from the premises. Sykes Aff. [Docket No. 24] ¶¶ 1–2. His reason for doing so is disputed, but Fragola alleges he was irritated that she taped the complaint on the Housing Coordinator's door rather than sliding it under the door. Opp'n Mem. 2.

Police Officer Matthew Shohara ("Shohara") arrived and spoke to Sykes in the common area. Hanson Aff. [Docket No. 25] Ex. I ("Shohara Dep.") 57:5-16. Fragola was visibly intoxicated, and Shohara told her to wait in the vestibule. Id. 57:5-9, 66:22-67:1. Officer Christopher Hetland ("Hetland") arrived while Shohara was questioning Sykes, and Hetland smelled alcohol on Fragola. Hanson Aff. Ex. B. Sykes told Shohara that there had been problems with Fragola in the past, and the police had been called on a previous occasion. Sykes Aff. ¶ 3. Sykes explained to Shohara that when he asked Fragola not to place complaints outside the door she began yelling and cursing and making verbal threats that she would "kick [his] butt." Id. ¶ 4. Fragola overheard Shohara's conversation with Sykes, became aggressive, cursed, and accused Sykes of lying. Shohara Dep. 63:5-64:10. Shohara then spoke with Fragola, who told him she had been drinking but was not drunk. Fragola Aff. [Docket No. 29] ¶ 3; Shohara Dep. 152:3-4.

When Shohara informed Fragola he would be taking her to detox, she became aggressive and resisted. Shohara Dep. 108:22-22, 109:1-9. Shohara then handcuffed her hands behind her back and took the keys and wallet from her hands for officer safety. Id. ¶¶ 69:9-70:3, 78:2-13. Fragola resisted, kicking her feet toward Shohara and Hetland as they escorted her to the squad car. Id. ¶¶ 75:24-76:3. She then went limp, and Shohara and Hetland had to carry her to the car. Id. ¶ 76:3.

2

Shohara drove Fragola to the Ramsey County Detox Center ("detox center").

In the sallyport of the detox center, Shohara placed Fragola's keys and wallet on the stair ledge before opening the squad card door for her. Id. ¶¶ 90:1-6. Fragola stepped out of the car and asked to see her keys and wallet, but Shohara instead began escorting her to the elevator by holding her elbow. Id. ¶¶ 88:20-24, 93:2015. Near the elevator, Fragola worked her handcuffed hands to the right side of her body and grabbed onto the wall. Id. ¶ 89:7-11. Shohara warned Fragola to let go, and he tugged on her several times attempting to free her from the wall. Id. ¶¶ 97:15-19, 185:21-23. On his last pull attempting to free Fragola from the wall, he and Fragola fell away from the wall. Hanson Aff. Ex. E ("Video: Detox Center Red (7/4/2010)"). Fragola sustained a bloody injury to the left side of her face. Hanson Aff. Ex. J ("Fragola Dep.") 64:22– 65:16. Shohara stood up, pushed the detox center call button, retrieved Fragola's keys and wallet, and called dispatch for medics. Video: Detox Center Red (7/4/2010). Shohara then raised Fragola's head, detox center staff assisted in treating Fragola, and an Allina ambulance arrived on the scene to take her to Regions Hospital. Shohara Dep. 108:20-24, 115:4-116:6.

Fragola was uncuffed at the hospital, and her blood-alcohol content was measured at .244 BAC. Hanson Aff. Ex. B. She suffered a broken cheekbone, multiple fractures around her left eye socket, extreme swelling, and injuries which required surgery. Fragola Dep. 69:24-78:24. Fragola returned to her apartment at St. Christopher's Place around 11:30 that evening. Sykes Aff. ¶ 8.

On November 1, 2010, Fragola filed her Complaint, initiating this lawsuit. Notice of Removal [Docket No. 1] Ex. B ("Complaint").

### III.  DISCUSSION

A.  **Standard of Review for Motion to Amend**

Fragola seeks to amend her complaint to sue Shohara in his individual capacity on her claim arising out of 42 U.S.C. § 1983.  The general rule is that the determination of granting leave to amend is soundly within the discretion of the trial court.  See e.g., Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).  Amendments of complaints "should be allowed liberally to ensure that a case is decided on its merits, . . . [but] there is no absolute right to amend."  Ferguson v. Cape Girardeau Cnty., 88 F.3d 647, 650–51 (8th Cir. 1996) (internal citation omitted).   Rule 15 of the Federal Rules of Civil Procedure provides the basis for motions to amend, stating in pertinent part that "a party may amend its pleadings only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Federal Rule of Civil Procedure 16 governs pretrial scheduling orders, and a court may require a showing of good cause for leave to amend a complaint outside the requirements of the pretrial scheduling order.  See Freeman v. Busch, 349 F.3d 582, 589 (8th Cir. 2003) (requiring a showing of good cause for party's ten-month delay in seeking to add punitive damages), cert. denied, 529 U.S. 1033 (2000).  Generally, denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party."  Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Because claims under 42 U.S.C. § 1983 ("§ 1983") subject public servants to individual liability, courts have held that to sue a public official individually the plaintiff must "expressly and

unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). The purpose of requiring such an express statement of being sued in individual capacity is "to give proper notice to the defendants." Id.

### B. Motion to Amend is Granted

It is undisputed that Fragola failed to expressly state in either the caption or the § 1983 section that Shohara was being sued in his individual, as well as official, capacity for violations of § 1983. In the briefings and at oral argument, Fragola offered no "good cause" as to why Shohara was not expressly sued in his individual capacity. Fragola does admit that she did not seek to amend her Complaint earlier because she was unaware of the potential defect until Defendants filed their Memorandum in Support of Motion for Summary Judgment on November 3, 2011.

However, because amendments should be liberally granted and because courts are required to "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), Fragola's motion to amend will be granted.

The line of cases Defendants cited supporting a good cause showing and denying leave to amend are inapposite, dealing not with the inclusion of a necessary party such as Shohara but post-trial motions to add a new claim, Niagara, 800 F.2d at 749, motions to include punitive damages, Freeman, 349 F.3d at 589, and amendments to cure jurisdictional defects, Sanders, 823 F.2d at 216. Moreover, the Ferguson justifications for denying leave to amend are absent here. Ferguson, 88 F.3d at 650–51. Specifically, granting leave to amend Fragola's Complaint to sue Shohara in his individual capacity would not result in undue delay, given that he is already a party in his official capacity for the §

1983 claim and is sued individually for several of the state law claims. Furthermore, no evidence has shown that Fragola's failure to expressly sue Shohara in his individual capacity was a result of bad faith. Suing Shohara has not been argued as being futile, given that the statute of limitations has not yet expired on this cause of action. Lastly, Shohara would not be unfairly prejudiced by being sued in his individual capacity under 42 U.S.C. § 1983, since he is on notice and being sued individually for other claims in this lawsuit. Perhaps most importantly, permitting such an amendment allows adjudication on the merits and promotes judicial efficiency. Were this motion for leave to amend denied, Fragola could potentially refile her Complaint, thus restarting the present litigation with Shohara being sued individually. For all the reasons stated, Fragola's motion to amend her Complaint is granted.

### C. Standard of Review for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### D. Fragola's Claims All Warrant Dismissal

Fragola's Letter Brief [Docket No. 35] Ex. A ("Amended Complaint") alleges the following claims against the City of Saint Paul ("St. Paul"), Saint Paul Police Department ("SPPD"), and Officer Matthew Shohara in his individual and official capacities: (1) assault and battery; (2)

negligence; (3) negligent supervision, retention and hiring; (4) intentional infliction of emotional distress; (5) false imprisonment; and (6) § 1983 violations.

### 1. 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, governmental persons and entities are liable for the deprivation of rights guaranteed by the Constitution.[2] 42 U.S.C. § 1983 does not create substantive rights, but rather provides remedies for deprivations of other constitutional rights. Albright v. Oliver, 510 U.S. 266, 271 (1994). Here, Fragola has alleged § 1983 claims against state entities – St. Paul and the SPPD – as well as an individual state actor, Officer Shohara. The § 1983 claims against Shohara allege unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, as well as violations of Fragola's due process rights protected by the Fourteenth Amendment. Am. Compl. ¶ 110. The § 1983 claims against St. Paul and the SPPD include the claims against Shohara as well as unconstitutional or unlawful supervision or training practices which deprived Fragola of her rights. The claims are analyzed separately as follows.

#### a. Shohara Claims

##### i. Excessive Force

Analysis of a § 1983 claim begins with "identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 393–4 (1989). Claims of excessive force by law enforcement during the course of an arrest or detainment in violation of the Fourth Amendment are analyzed under the reasonableness standard – "whether the officers'

---

[2]"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ." 42 U.S.C. § 1983.

actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. The reasonableness of use of force is objectively assessed from a reasonable officer's contemporaneous perspective, not "with the 20/20 vision of hindsight." Id. at 396. Factors in determining reasonableness include the crime's severity, whether the suspect poses an immediate threat to officers or others, and whether the suspect actively resists or attempts to evade arrest by flight. Id. "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment, and the analysis must account for the fact that police officers must make split-second decisions in difficult, fast-moving situations. Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d. Cir. 1973)). Additionally, courts may "consider the result of the force" in determining the reasonableness of that force. See Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003).

In Moore v. Novak, 146 F.3d 531 (8th Cir. 1998), the Court of Appeals for the Eighth Circuit determined that using a stun gun and "body-slamming" a handcuffed individual to the floor was objectively reasonable where that individual was "intoxicated, agitated, refused to comply with commands, kicked the arresting officer, continued to struggle and attempt to get away, and posed an immediate threat to his own safety and to the safety of the officers." Id. at 535.

Here, the record similarly reflects that Fragola was intoxicated, agitated, had refused to comply with Shohara's commands, and had struggled when handcuffed at St. Christopher's Place. Although Fragola and Shohara differ in recounting the acts which occurred at the detox center, the video clearly shows that Fragola resisted Shohara when they neared the elevator and that she grabbed onto the wall or something connected to the wall. Video: Detox Center Red (7/4/2010). The video also shows that

Shohara pulled on her three times in an attempt to extricate her from the wall. Id. On the second attempt, the video shows that Fragola widened her stance to resist being pulled away from the wall. Id. Like the circumstances in Novak, Shohara used reasonable force in attempting to release Fragola's hold from the wall. While he could have utilized other methods or pulled her in another direction, such "20/20 hindsight" speculations do not speak to whether his actual use of force was reasonable. Notwithstanding Fragola's extensive injuries, the undisputed video evidence shows Shohara's actions were objectively reasonable and therefore do not constitute excessive force.

### ii. Qualified Immunity

Even assuming a finding of excessive force, a person sued in his individual capacity may still be free from liability under the doctrine of qualified immunity. Qualified immunity shields a government official from civil suits except where the conduct violates a clearly established right of which a reasonable person would have known. See Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000). Summary judgment on the basis of qualified immunity is warranted if the defendant could have reasonably believed his conduct to be lawful "in light of clearly established law and the information [that the defendant] possessed." Id. (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Qualified immunity protects mistaken judgments and "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 343 (1986).

Although Fragola avers that Shohara was incompetent in his handling of an intoxicated, handcuffed individual, the record which includes the video evidence, even taken in the light most favorable to Fragola, establishes that Shohara reasonably could have believed his conduct lawful. It is undisputed that Shohara's first two attempts to pull Fragola from the wall were reasonable and lawful.

Therefore, Fragola's argument is that Shohara's third tug on Fragola was clearly unlawful and unreasonable under the circumstances. The Court disagrees. Given that Fragola was and had been resisting, was not and had not been obeying lawful commands, and was intoxicated and agitated, Shohara's escalating use of force in his attempt to extricate her from the wall was not clearly unlawful or unreasonable under the circumstances. His actions, therefore, are covered by qualified immunity and summary judgment is granted on the § 1983 claims against him.

### b.      City of St. Paul Claims

Fragola's claims against St. Paul derive from Shohara's actions in his official capacity. Specifically, Fragola appears to be asserting a Monell claim that St. Paul's policy, customs, training or supervision were the cause of her injuries. See Monell v. New York City Dep't of Soc. Svcs., 436 U.S. 658 (1978). A suit against an employee in his official capacity is deemed a suit against the employer only, Johnson, 172 F.2d at 535, "another way of pleading an action against an entity of which an officer is an agent," Monell, 436 U.S. at 690. Municipalities cannot be held vicariously liable under a § 1983 claim; rather, they may only be sued when the "execution of a government's policy or custom . . . inflicts the injury." Monell, 436 U.S. at 694. Policy and custom are not interchangeable terms. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). Policy is limited to the agency's official policy, a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. Id. Custom requires three elements be established: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional conduct by the government entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice of that misconduct; and (3) proof that the

custom was the moving force behind the violation. Ware v. Jackson Cnty., 150 F.3d 873, 880 (8th Cir. 1998) (citing Jane Doe A v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990)).

Fragola has failed to sufficiently plead a Monell claim against St. Paul. Fragola has alleged only that St. Paul conspired to deprive her of her rights, Am. Compl. ¶ 112, that St. Paul had a pattern and practice of depriving citizens of constitutional rights, id. ¶¶ 107–08, and that St. Paul's inadequate training, supervision, discipline, screening, and termination procedures showed a deliberate indifference to her constitutional rights, id. ¶ 109. Short of these bald assertions of a policy or custom, however, Fragola has not identified specific facts that, if proven, would establish that St. Paul either had an official policy for depriving her of her constitutional rights or a custom which caused her injuries. She has not alleged that St. Paul knew of a widespread, persistent pattern which led to her injuries, nor has she stated that St. Paul knew of such behavior occurring in the past, such that it could have tacitly authorized or expressed deliberate indifference to that conduct. Furthermore, outside her allegations that Shohara was insufficiently trained in procedures for escorting handcuffed individuals, Fragola has failed to raise a fact issue that any such custom was the "moving force" behind her injuries. Therefore, summary judgment is granted as to Fragola's § 1983 claims against St. Paul.

     **c. SPPD Claims**

Fragola has also alleged that SPPD committed § 1983 violations of her constitutional rights. The law is clear, however, that unlike cities, municipal entities such as police departments cannot sue or be sued. See Hyatt v. Anoka Police Dep't, 700 N.W.2d 502, 505–06 (Minn. App. 2005) (citing Minn. Stat. §§ 412.111, 412.211, both of which give municipalities the right to sue and be sued); see also, Ketchum v. City of West Memphis, 974 F.2d 81, 82 (1992) (finding the police department and

paramedic services "not juridical entities suable as such"). Therefore, summary judgment as to Fragola's § 1983 claims, as well as all her other claims against SPPD, is granted.

### 2. False Imprisonment

False imprisonment, under Minnesota law, requires proof of three elements: (1) words or actions intended to confine a person; (2) actual confinement; and (3) awareness by the person that she is confined. Eilers v. Coy, 582 F.Supp. 1093, 1096 (D. Minn. 1984). A Fourth Amendment claim of false imprisonment requires an inquiry into whether the officers had probable cause to arrest the plaintiff. Smithson, 235 F.3d at 1062. Such probable cause exists if, under the totality of facts, a prudent person would believe the individual arrested had committed an offense at the time of the arrest. Id. A police officer is entitled to qualified immunity if he arrests an individual under an objectively reasonable mistaken belief that he had arguable probable cause to do so. Id. (citing Hunter v. Bryant, 502 U.S. 224, 228–29 (1991)).

Minn. Stat. 253B.05, subd. 2(A) allows a peace officer to take a person who is publicly intoxicated into custody and to a treatment facility, if the person is in danger of causing self-harm or harm to any person or property. Here, it is undisputed that Fragola was intoxicated and in a public commons area in St. Christopher's Place. Although Fragola argues that she should have been taken to her apartment, peace officers including Shohara have discretion to take a person into custody and transport them to a treatment facility if they believe that person may harm themselves, others, or property. Fragola's statement that she would "kick [Syke's] butt," her aggressive demeanor, and her public intoxication presented sufficient facts for Shohara's decision to take her into protective custody and transport her to a treatment facility.

12

Moreover, the record reflects that Shohara had arguable probable cause to arrest Fragola. The fact that he thought of the "arrest" as "protective custody," or that he did not intend to take her to prison or to book her, does not diminish the fact that Shohara personally witnessed Fragola engage in disorderly conduct, which is a misdemeanor.³  See United States v. Watson, 423 U.S. 411, 418 (1976) (holding police officers may arrest without warrant if a misdemeanor occurs in their presence). In fact, the concept that peace officers can arrest without a warrant when a misdemeanor occurs in their presence "reflect[s] an ancient common-law rule." Watson, 423 U.S. at 418 (citing Samuel v. Payne, (1780) 99 Eng. Rep. 230 (K.B.)). Since Shohara's arrest of Fragola was not unlawful, she was not falsely imprisoned. Alternatively, Shohara is covered by qualified immunity because he had arguable probable cause for arresting her. For the reasons set forth, summary judgment is granted on her claim of false imprisonment.

### 3. Assault and Battery

Battery is the intentional unpermitted offensive contact with another. Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980).⁴ Minnesota law authorizes police officers to use reasonable force in effecting a lawful arrest or executing any other lawful duty. Minn. Stat. § 609.06,

---

³"Whoever . . . in a public or private place . . . engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others . . . is guilty of disorderly conduct, which is a misdemeanor." Minn. Stat. § 609.72, subd. 1(3).

⁴Assault is an action intended to and which does in fact create fear of imminent bodily harm. See U.S. v. Dinwiddie, 76 F.3d 913 (8th Cir. 1996); see also Minn. Stat. § 609.2, subd. 10. Although Fragola's Amended Complaint alleges assault, Am. Compl. ¶ 21, it is "apparent that the essence of plaintiff's claim is based on battery." See e.g., Paradise, 297 N.W.2d at 155, n. 3. Because the damages Fragola alleges are based on actual physical injury and not as a result of fear of physical harm, and also because Fragola has apparently abandoned the assault claim by failing to include it in her memorandum opposing summary judgment, the assault claim will not be analyzed here.

subd. 1(a, d). For the use of force to be unreasonable, the Plaintiff bears the burden of proving that force was excessive or unreasonable. Paradise, 297 N.W.2d at 155.

As discussed above, Shohara's actions do not constitute unreasonable or excessive force. Even viewed in the light most favorable to Fragola, the video and her version of the facts do not support that Shohara's actions were excessive or unreasonable. His incremental use of force to control a resisting individual does not rise to the level of excessive, and no police officer would objectively find his actions unreasonable or unlawful at the time he committed them.

Moreover, official immunity also bars the assault and battery claims against Shohara. The doctrine of official immunity shields a public official from personal liability for damages caused by the exercise of her judgment or discretion in her official duties as long as she is not guilty of a willful or malicious wrong. Brown v. City of Golden Valley, 534 F.Supp.2d 984, 995 (D. Minn. 2008) (citing Elwood v. Rice Cnty., 423 N.W.2d 671, 677 (Minn. 1988)). The court applies a two-step analysis to official immunity determinations. First, the court determines whether the alleged acts were ministerial or discretionary. Brown, 534 F.Supp.2d at 995–96 (quotation omitted). Second, the court determines whether the alleged acts were malicious or willful. Id. (quotation omitted). Police officers are covered by the doctrine of official immunity, because they "are not purely ministerial officers, in that many of their duties are of an executive character involving the exercise of discretion." Elwood, 432 N.W.2d at 678.

Here, because Shohara was engaged in discretionary action as a police officer, the sole remaining question for official immunity is whether his treatment of Fragola was malicious or willful. The video and other evidence, taken in the light most favorable to Fragola, does not show malicious or

willful conduct by Shohara. Although Shohara may have had other options for dealing with a resisting, intoxicated individual, his choice to pull her away from the wall with progressively increasing force does not evidence malice or willfulness sufficient to deny him the protections of official immunity. Therefore, summary judgment on Fragola's assault and battery claim is granted.

### 4. Negligence

Negligence requires the existence of a duty of care, a breach of that duty, an injury, and proof that the breach of the duty of care was a proximate cause of the injury. See Domagala v. Rolland, 805 N.W.2d 14, 22 (Minn. 2011). Whether a legal duty exists is a question of law for the court to decide. State v. Back, 775 N.W.2d 866, 869 (Minn. 2009). A general duty to the entire public, rather than a specific class of persons, does not support a negligence action. Kelly v. City of St. Paul, Civ. No. 09-461, 2010 WL 4272460, *11 (D. Minn. Oct. 18, 2010) (internal citation omitted). To recover against a municipality for a negligence claim, a plaintiff must establish the breach of a duty owed him in his individual capacity, not just "some obligation owed to the general public." Id. (quoting Hoffert v. Owatonna Inn Towne Motel, Inc., 199 N.W.2d 158, 160 (Minn. 1972)). For respondeat superior to apply, the state actor must be found personally liable for the tort and must have been acting within the scope of his employment. Leaon v. Washington Cnty., 397 N.W.2d 867, 874 (Minn. 1986).

Fragola has alleged but has not specified the duty of care owed her by Shohara, nor has she presented facts to show he breached any duty. Moreover, as he is not personally liable for torts under the qualified immunity doctrine, St. Paul cannot be liable under a respondeat superior theory. Therefore, summary judgment is granted on Fragola's claim for negligence.

### 5. Negligent Supervision, Retention and Hiring

Under Minnesota law, cities are immune from liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, subd. 6. Whether statutory immunity applies is a question of law. Snyder v. City of Minneapolis, 441 N.W.2d 781, 786 (Minn. 1989). In determining whether a function is discretionary and thus receives statutory immunity, the distinction is between acts involving policymaking, which are immune, and acts which "simply effectuate a decision or policy." Janklow v. Minn. Bd. of Examiners for Nursing, 552 N.W.2d 711, 716 (Minn. 1996). Minnesota courts have found that supervisory, retention, and hiring decisions are entitled to statutory immunity. See Oslin v. State, 543 N.W.2d 408, 415–16 (Minn. Ct. App. 1996), rev. denied (April 1, 1996).

Because its supervision, retention, and hiring practices are subject to statutory immunity, St. Paul is not liable under Fragola's claims of negligent supervision, retention, and hiring. As a result, summary judgment is granted on this claim.

### 6. Intentional Infliction of Emotional Distress

In Minnesota, intentional infliction of emotional distress requires proof of the following four elements: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) that distress was severe. Kelly, 598 N.W.2d at 663. The severity of the emotional distress must be "so severe that no reasonable [person] could be expected to endure it." Hubbard v. United Press Int'l Inc., 330 N.W.2d 428, 439 (Minn. 1983) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)). "The appropriate method of proving the severity and causation of emotional distress is through medical testimony." Langeslag v. KYMN Inc.,

664 N.W.2d 860, 869–70 (Minn. 2003).  Summary judgment is warranted when a plaintiff fails to "meet the high standard of proof needed for an intentional infliction of emotional distress claim." Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992).

Here, Fragola has abandoned her intentional infliction of emotional distress by failing to argue it at summary judgment stage.  Moreover, Fragola has failed to provide evidence to show that Shohara's actions were extreme or outrageous, that his actions were the cause of emotional distress, that she experienced any emotional distress, or that her alleged emotional distress was severe.  As a result, Fragola has failed to meet the high threshold standard of proof required for a claim of intentional infliction of emotional distress, and summary judgment is granted on this claim also.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

   **1.** Plaintiff's Motion to Amend Complaint [Docket No. 31] is **GRANTED**;

   2. Defendants' Motion for Summary Judgment [Docket No. 19] is **GRANTED**; and

   3. All claims are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: January 5, 2012.